UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WIIFM, INC., | Case No. 2:21-CV-955 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| DOORBUSTERS LOCK & SAFE, LLC, | |
| Defendant(s). | |

Presently before the court is plaintiff WIIFM, Inc.'s ("WIIFM") motion for a preliminary injunction.[1] (ECF No. 3). Defendants Doorbusters Lock & Safe, LLC ("DLS") and its principal Eli Levi (collectively "defendants") responded in opposition (ECF No. 8) to which WIIFM replied (ECF No. 12).

I. **BACKGROUND**

WIIFM offers locksmith services in Clark County, Nevada, under the trade name "Liberty Lock & Security." (ECF No. 3 at 5). It is the senior user and owner of the "LIBERTY" service mark and a Statue of Liberty logo mark. (Compl., ECF No. 1 ¶¶ 8–13; ECF No. 3 at 5). In December 2017, WIIFM learned that DLS was infringing on its marks by offering locksmith services in Clark County under the trade name "Liberty Lock & Key"

---

[1] The court will decide this preliminary injunction motion without a hearing. *See Gryglak v. HSBC Bank USA, N.A.*, 802 F. App'x 292, 293 (9th Cir. 2020) ("[T]here is no presumption in favor of evidentiary hearings under Rule 65 of the Federal Rules of Civil Procedure. The circumstances of this case did not require the district court to hold an evidentiary hearing, and we find no abuse of discretion in its failing to do so." (citing *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 554–55 (9th Cir. 1986))).

**James C. Mahan**
**U.S. District Judge**

and a Statute of Liberty logo mark.² (ECF No. 3 at 5). DLS had been using these marks since 2012. (*Id.*). The parties' places of business are within three miles of each other. (*Id.* at 9).

WIIFM sued DLS in Nevada state court in January 2018 and the parties eventually reached a settlement via mediation in April 2019. (*Id.* at 5–6). WIIFM agreed to pay $255,000—an initial $75,000 payment and monthly payments over two years—in exchange for DLS transferring any rights it had in the marks at issue. (*Id.* at 6). A security agreement was executed alongside WIIFM's payment obligations. (*Id.*). DLS had a 90-day transition period after WIIFM's initial payment to wind up its use of the marks. (*Id.*). This included obligations to use commercially reasonable efforts to rebrand and rename itself; remove the marks from its vehicles, advertising, social media, and a list of websites; and transfer its state and federal registrations of the Liberty mark to WIIFM. (*Id.* at 6–7).

WIIFM claims that DLS has not performed its wind-up obligations. After the 90-day transition period, a 10-day default cure period, and to this day, the marks are associated with DLS on at least five websites. (*Id.* at 7). DLS never transferred its Nevada registration of the Liberty service mark. (*Id.* at 7–8). It also did not remove signage at its place of business with the Statute of Liberty logo mark. (*Id.* at 8). WIIFM also avers that confused customers sent payments to DLS for locksmith services that WIIFM performed. (*Id.* at 8–9). WIIFM stopped making monthly payments after September 2019, asserting that it is excused from its payment obligations due to DLS's material breach. (*Id.* at 8). In response, DLS sent WIIFM a demand letter in April 2021 asking for an itemized list of its collateral including the intellectual property at issue. (*Id.*).

WIIFM alleges three claims under the Lanham Act, fraudulent inducement arising in the settlement negotiations, breach of the settlement agreement, and two conversion claims for retaining the confused customer payments. (ECF No. 1 ¶¶ 76–141). It also asks for a declaratory judgment that DLS materially breached the settlement agreement and thus cannot assemble and sell WIIFM's collateral. (*Id.* ¶¶ 142–147). WIIFM now moves to

---

² Any references to "Liberty Lock" in this order are to defendant DLS.

**James C. Mahan
U.S. District Judge**

- 2 -

preliminarily enjoin DLS from infringing on its marks and assembling its collateral. (ECF No. 3 at 9).

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Id.* at 20.

Alternatively, the Ninth Circuit has maintained its serious question and sliding scale test post-*Winter*. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011); *see also Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (noting that the Ninth Circuit has "two interrelated legal tests" for preliminary injunctions that are "the outer reaches of a single continuum"). Under this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction" so long as the other two *Winter* elements are met. *Alliance for the Wild Rockies*, 632 F.2d at 1131 (internal quotation marks omitted). And "a stronger showing of one element may offset a weaker showing of another." *Id.*

## III. DISCUSSION

The parties give short shrift to their settlement's arbitration provision even though "[t]he arbitrability of a particular dispute is a threshold issue." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006). The arbitration provision says:

> **Any action or proceedings against any of the Parties hereto relating in any way to Liberty Lock's obligations during the Transition Period shall be solely brought by way of binding arbitration before the Mediator.** Aside from disputes arising out of the Parties' obligations during the Transition Period, any other action or proceedings against any of the Parties hereto relating in any way to this Settlement Agreement or the subject matter hereof shall be brought and enforced exclusively in the competent courts of Nevada, County of Clark, and the Parties hereto consent to the sole and exclusive jurisdiction of such courts in respect of the action or proceeding.

(ECF No. 3-4 at 8 (Section 14) (emphasis added)). The parties also agreed that "whether or not Liberty Lock made commercially reasonable efforts to comply with the [Transition

- 3 -

Period] obligations set forth in Section 2(c) herein will be determined solely by the Mediator and in accordance with Section 14 herein." (*Id.* at 5 (Section 2d)). Moreover, "the Security Interest shall be deemed terminated in the event that Liberty Lock fails to comply with its obligations" and "[p]rior to terminating the Security Interest for Liberty Lock's failure to comply with its obligations . . . WIIFM shall proceed in the manner described in Section 14." (*Id.* at 6 (Section 4a)).

The parties' agreed-upon mediation provider is JAMS (*id.* at 2) which empowers its mediators to "grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods." JAMS Comprehensive Arbitration Rules & Procedures, Rule 24(e) (effective June 1, 2021).

The court's limited role under the Federal Arbitration Act is to determine (1) whether a valid agreement to arbitrate exists and (2) whether the agreement covers the dispute at issue. *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The FAA leaves no room for discretion; the court must stay judicial proceedings and compel arbitration of claims covered by an enforceable arbitration agreement. *Id.; see also Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985). And when the parties "have agreed to arbitrate some matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (emphasis in original) (internal quotation marks and citation omitted).

To that end, the Ninth Circuit has warned that it is "inappropriate for the district court to grant preliminary injunctive relief" when a plaintiff's claims are arbitrable and the arbitrator is authorized to grant interim relief. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). Courts consistently deny interim relief when an arbitrator can issue such relief. *See, e.g.*, *DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083 (C.D. Cal. 2007) (denying a preliminary injunction motion because "it is best not to carve out interim relief from the issues the arbitrator will decide"); *Bank of Hemet v.*

- 4 -

*Open Sols., Inc.*, No. CV 10-692 CAS OPX, 2011 WL 486572, at *3 (C.D. Cal. Feb. 3, 2011) (compelling arbitration despite a request for preliminary injunctive relief); *Bank Leumi, USA v. Miramax Distribution Servs., LLC*, No. 2:18-CV-07574-SVW-KS, 2018 WL 7568361, at *8 (C.D. Cal. Dec. 27, 2018) (vacating an application for a writ of attachment and compelling arbitration).

DLS points to the arbitration provision merely to argue that WIIFM does not have a likelihood of success on its breach of contract claim. (ECF No. 8 at 16). That is because the claim is "based on DLS's alleged failure to employ commercially reasonable efforts to fulfill its [Transition Period] obligations" which "fall[s] squarely within the confines" of the arbitration provision. (*Id.*). And it also argues that WIIFM "may not unilaterally declare that DLS breached the Settlement Agreement. That is a matter to be decided through Arbitration." (*Id.* at 18).

In response, WIIFM offers a strained reading of the arbitration provision. (ECF No. 12 at 7). Again, the arbitration provision requires that "[a]ny action or proceedings against any of the Parties hereto relating in any way to Liberty Lock's obligations **during the Transition Period** shall be solely brought by way of binding arbitration before the Mediator." (ECF No. 3-4 at 8 (Section 14) (emphasis added)). According to WIIFM, it is required to arbitrate *during the 90-day Transition Period* only and is free to litigate ongoing breaches after the Transition Period. (ECF No. 12 at 8).

That is, the "during the Transition Period" clause modifies the "any action or proceedings" clause. The court is unpersuaded. Moreover, even though the breaches "during and after the Transition Period are connected to each other" and "public policy . . . favor[s] arbitration," WIIFM rebuffs arbitration as duplicative of this litigation. (*Id.*). This argument neglects the court's duty to resolve any doubts over the scope of arbitral issues in favor of arbitration.

At bottom, WIIFM seeks to enjoin DLS from infringing on its marks and assembling its collateral. (ECF No. 3 at 9). The crux of this twofold injunction is whether DLS breached its wind-up obligations in the Transition Period. The parties unambiguously

delegated this preliminary question to the mediator. Any ongoing infringement and Lanham Act violations by DLS began with a breach of its wind-up obligations in the Transition Period.

DLS's right to WIIFM's collateral turns on whether WIIFM's payment obligations were excused which turns on whether DLS breached its wind-up obligations in the Transition Period.

Given this preliminary question, the broad scope of the arbitration provision, and the court's duty to resolve any doubts over the scope of arbitral issues in favor of arbitration, WIIFM's motion for a preliminary injunction is DENIED and this case is STAYED pending the alternative dispute resolution procedures in Section 14 of the settlement agreement.

**IV.  CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that WIIFM's motion for a preliminary injunction (ECF No. 3) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that this case is STAYED pending the alternative dispute resolution procedures in Section 14 of the settlement agreement. The parties shall file a status report within 30 days after such procedures conclude.

DATED July 9, 2021.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 6 -